**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERRY DILLINGHAM,<br><br>    Plaintiff,<br><br>v.<br><br>N. EMERSON, et al.,<br><br>    Defendants. | Case No.: 1:18-cv-00507-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT CERTAIN DEFENDANTS AND CLAIMS BE DISMISSED FOR FAILURE TO STATE A COGNIZABLE CLAIM<br><br>(ECF No. 43)<br><br>THIRTY (30) DAY DEADLINE |

**I.**

**INTRODUCTION**

Plaintiff Jerry Dillingham is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 26, 2018, the Court screened Plaintiff's amended complaint and found that Plaintiff stated a cognizable claim against Defendants Emerson, Wilson, Wescoat, Velasco, Martines, and Loflen, in their individual capacities, for conditions of confinement in violation of the Eighth Amendment. (ECF No. 30.) The Court found that Plaintiff failed to state any other cognizable claims. Fed. R. Civ. P. 8(a); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). The Court ordered Plaintiff to either file a second amended complaint curing the deficiencies identified or notify the Court that he is willing to proceed only on his cognizable claims.

1

On August 24, 2018, Plaintiff moved for an extension of time to comply with the screening order. (ECF No. 30.) On August 27, 2018, that request was granted, and the deadline was extended by thirty (30) days. (ECF No. 32.)

On September 17, 2018, Plaintiff filed a notice stating that he stands on his pleading. (ECF No. 33.) On September 19, 2018, findings and recommendation issued recommending that certain defendants and claims be dismissed for failure to state a claim. (ECF No. 34.) Plaintiff was granted an extension of time and filed objections to the findings and recommendations on December 5, 2018. (ECF No. 41.) On December 11, 2018, Plaintiff was granted leave to file a second amended complaint. (ECF No. 42.) Plaintiff filed a second amended complaint on January 11, 2019. (ECF No. 43.) On January 15, 2019, an order issued vacating the September 19, 2018 findings and recommendations. (ECF No. 44.)

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible,

which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently housed at Kern Valley State Prison. Plaintiff brings this action against Defendants N. Emerson, E. Wilson, S. Martines, S. Wescoat, D. Valesco, Loflen (also possibly known as "Lofflen"), D. Ibarra, S. Marsh, and John Doe 1, correctional officers employed at the California Substance Abuse Treatment Facility and State Prison at Corcoran, California ("CSATF"). Plaintiff also names as defendants Stu Sherman, Warden of CSATF, and Scott Kernan, Secretary of CDCR. The incidents alleged in the complaint occurred while Plaintiff was housed at CSATF.

It rained during the evening of January 25, 2016 to the morning of January 26, 2016. Plaintiff woke the morning of January 26, 2016 to a large puddle in his cell nearly causing him to lose his footing. Plaintiff heard other prisoners complaining to Defendants Emerson, Wilson, Westcoat, and Martines that their cells were flooded. Plaintiff alleges that Defendants Emerson, Wilson, Westcoat, Martines, Valesco, and Loflen were aware of the flooding because from January 21, 2016 through May 5, 2016 they had to wade through the puddles in the building when they made their rounds. Defendants Emerson, Wilson, Wescoat, and Martines would have the inmate porters come and mop up the water that had flooded into the cells. Plaintiff states that on examination, he could see that there were holes in the roof that allowed the rain to come into the building. The water dripped down and flooded the light fixtures with water and onto the floor. Plaintiff contends that the cell walls had mold on them demonstrating that the issue had existed for years. Plaintiff alleges that he suffered

3

respiratory issues due to the mold.

Plaintiff contends that from January 21, 2016, through May 5, 2016, on days that it rained, he complained to Defendants Emerson, Wilson, Wescoat, Martines and Valesco during security inspection about the hazardous conditions. The defendants would stand in a puddle of water in front of his cell door and did not relocate Plaintiff to a dry available cell.

During the first two weeks of February 2016, Plaintiff asked Defendant Valesco to move him to a dry cell. Defendant Valesco noticed the condition of Plaintiff's cell and told Plaintiff that he would not move him because since he had worked in the building he had noticed that many of the other cells are in the same condition.

Around March 6 or 7, 2016, Plaintiff woke up during the night and slipped on the wet floor causing him injury. Plaintiff asked Defendant Martines to move him to a dry cell. Defendant Martines told Plaintiff that his cell has had a problem with leaking for a couple of years. Defendant Martines told Plaintiff that his cell should be "red flagged" but that he was not able to do it because he was not a "regular." Defendant Martines told Plaintiff that he could not move him to a dry cell.

On March 8, 2016, Defendant Marsh told Plaintiff that the administration has been aware of that Plaintiff's cell has water leaking into it from the cracks in the roof for over two years.

Plaintiff submitted a health care request and, on March 9, 2016, he was seen by Nurse McCoy who provided Plaintiff with medication for his lower back and hip pain and headache. Plaintiff was referred for follow-up treatment.

On May 5, 2016, Plaintiff complained to Defendant Valesco that it had rained overnight and his cell was again flooded. Plaintiff asked to be housed in a dry cell. Plaintiff gave him a completed inmate request for services. Later than day, Plaintiff saw Defendant Valesco in the office with a sergeant (Doe 1) passing the form back and forth and discussing it. Defendant Valesco came to Plaintiff's cell and told him that they had discussed his form and he would not be moved to cell 225. Defendant Valesco told Plaintiff that he would not sign the form because it would cause him to be liable. Defendant Valesco handed Plaintiff back the form. Plaintiff asked Defendant Valesco for the supervisor's name, but Defendant Valesco just turned and walked away.

On May 6, 2016, Defendant Emerson and Wescoat arrived about 6:30 and Defendant Wescoat lost his footing while wading through the puddles of water. Plaintiff asked to be moved out of his cell into cell 225 which was vacant. Defendant Wescoat refused to move Plaintiff to cell 225 stating that they knew about his complaining in inmate appeals and that neither he nor Emerson would "red flag" Plaintiff's cell. Plaintiff had filed an inmate grievance against Defendant Emerson and Wilson on January 21, 2016. Defendant Wescoat walked away. Plaintiff slipped on the wet floor injuring his right hip and his lower back.

Plaintiff sought medical care and from May 12, 2016, through October 13, 2016, Nurse McCoy and Dr. Brown provided him with medical care. Plaintiff had a consultation with an orthopedist regarding his right hip pain around January 3, 2018. The specialist diagnosed bone on bone trochanteric bursitis and severe osteoarthritis and recommended a hip replacement.

Plaintiff brings claims for unconstitutional conditions of confinement in violation of the Eighth Amendment, retaliation, conspiracy in violation of 42 U.S.C. § 1985(3), neglect to prevent a conspiracy in violation of 42 U.S.C. § 1986, and a state law claim for premises liability. He is seeking monetary damages.

## IV.

## DISCUSSION

### A. Official Capacity Claim

Plaintiff sues Defendant Kernan in his official capacity seeking monetary damages. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). A suit brought against government officials in their official capacity is generally equivalent to a suit against the government itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d

5

898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

Here, Plaintiff cannot bring this action seeking monetary damages against Defendant Kernan in his official capacity as such damages are barred by the Eleventh Amendment. Further, when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). Since Plaintiff is no longer housed at CSTAF, he cannot receive injunctive relief based on his prior conditions of confinement.

The Court recommends that Plaintiff's official capacity claims against Defendant Kernan be dismissed with prejudice.

### B. Supervisory Liability Claim

Plaintiff brings a supervisory liability claim against Defendants Ibarra, Loflen, Marsh, Sherman, and Kernan. As to Defendants Ibarra, Sherman and Kernan, the only allegations in the second amended complaint are that D. Ibarra is a first line supervising correctional officer; Stu Sherman is warden of CSATF; and Scott Kernan is Secretary of the CDCR.

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted); Iqbal, 556 U.S. at 676. "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Id.

Plaintiff relies on a September 2017 form letter he received from the Prison Law Office which

6

states that the Prison Law Office has documented the disrepair of CDCR prisons throughout the state and has shared concerns about the terrible conditions that prisoners are enduring due to leaky rooms and walls. (ECF No. 43 at 40.) The letter states that in September 2017, CDCR headquarters staff stated that they had requested money from the state to make repairs to leaky roofs. However, this letter is insufficient to demonstrate that any named defendant had knowledge of the conditions Plaintiff was confined in and failed to act.

Plaintiff's vague and conclusory statement that officials were aware of his unconstitutional conditions of confinement, or that the conditions were caused by a "policy," are insufficient to give rise to a constitutional violation. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Plaintiff makes some allegations that knowledge of his cell conditions was presented through the appeals process that was reviewed by staff overseen by the warden and secretary, but this is not sufficient to infer that the warden or secretary had knowledge of the issue and allowed the violation to continue, or that they implemented a policy.

Plaintiff has not alleged any personal involvement by Defendants Ibarra, Sherman, and Kernan but alleges that they are liable based solely on their supervisory positions within CDCR. Plaintiff has failed to state a claim against Defendants Ibarra, Sherman and Kernan in their individual capacities.

As to Defendants Loflen and Marsh, the Court considers whether Plaintiff has stated a claim in the following sections.

### C. Conditions of Confinement

Plaintiff alleges a claim for conditions of confinement in violation of the Eighth Amendment. To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety, and that there was no "reasonable justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)). Officials may be aware of the risk

because it is obvious. Thomas, 611 F.3d at 1152. An inmate is challenging the conditions of confinement must show there was a deprivation "sufficiently serious" to form the basis of a violation, and "the prison official acted "with a sufficiently culpable state of mind." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim." Johnson, 217 F.3d at 731.

At the pleading stage, the Court finds that Plaintiff has stated a claim against Defendants Emerson, Wilson, Wescoat, Valesco, Loflen, and Martines in their individual capacities. Plaintiff has alleged that each of these defendants did security counts that included Plaintiff's cell, and walked around puddles of water in Plaintiff's housing unit. Plaintiff also verbally complained to these defendants of hazardous conditions. According to Plaintiff, his cell had obvious water running down his cell walls, puddles of rain water pooling on the floor and in electrical light fixtures that posed a risk of electrocution, and cell walls that visibly showed years of built-up mold, all posing obvious, serious health and safety risks. Plaintiff also alleges that he suffered illnesses and injuries from the cell conditions.

Plaintiff has also stated a claim against Defendant Doe 1 based on the allegations that he reviewed Plaintiff's request for services and refused to have Plaintiff transferred to a dry cell.

Plaintiff alleges that an uninhabitable cell emergency maintenance order sheet was delivered to Defendant Marsh's office and that around March 8, 2016, Defendant Marsh told Plaintiff that he had been aware of the conditions in Plaintiff's cell for two years. This is sufficient to state a cognizable claim against Defendant Marsh.

However, Plaintiff has not stated sufficient facts to show a cognizable claim for deliberate indifference against any other defendants. Plaintiff makes general, conclusory allegations that it was widely-known by officials that his cell conditions were hazardous, or that policies and procedures, if followed, would have or should have made officials aware of his cell conditions. Those generalized, conclusory statements are not sufficient to show the state of mind necessary to state a claim here. Plaintiff has not alleged any facts demonstrating that any other named defendant was aware of the

conditions of which he complains.

Plaintiff has stated a condition of confinement claim against Defendants Emerson, Wilson, Wescoat, Valesco, Loflen, Martines, Marsh, and Doe 1. Plaintiff has failed to allege any facts sufficient to state a condition of confinement claim against any other named defendant.

**D.     Conspiracy**

Plaintiff brings a claim for conspiracy in violation of 42 U.S.C. § 1985(3). The Court shall consider whether Plaintiff has alleged facts to state a conspiracy claim under either sections 1983 or 1985(3).

A conspiracy claim brought under Section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted) ), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989) ). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

To state a claim under section 1985(3), a plaintiff must allege sufficient facts showing "a deprivation of a right motved by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)). "'The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (emphasis omitted). "An indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action. . .." Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (quoting Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir.2000)). "A mere allegation of conspiracy without factual

9

specificity is insufficient" to state a claim. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988).

Here, Plaintiff fails to state a claim under section 1985(3) as the second amended complaint is devoid of any factual allegations that there was some racial or class-based discriminatory animus by the defendants. Further, Plaintiff has not alleged sufficient facts to demonstrate that the defendants had a meeting of the minds to violate Plaintiff's constitutional rights.

The Court considers the factual allegations upon which Plaintiff alleges a conspiracy.

Plaintiff alleges that in February 2016, Defendant Valesco told him that he would not move him to a dry available cell because many other cells are in the same condition. (Compl. 11.)

Around March 6 or 7, 2016, Defendant Martines would not move him to a dry cell or "red flag" his cell because Defendant Martines was not a regular in the housing unit. (Compl. 11-12.) However, Plaintiff stated in a declaration on March 8, 2016, that Defendant Martines told him that "I have no where [sic] to shelter house you right know [sic]." (ECF No. 43 at 31.)

Around May 6, 2016, Plaintiff gave Defendant Valesco a request form, (ECF No. 43 at 45), which Defendant Valesco discussed with Doe 1. Defendant Valesco returned the form to Plaintiff and refused to act or sign it. When Plaintiff asked the name of the sergeant, Defendant Valesco walked away without answering.

The allegation that would support Plaintiff's claim of a conspiracy alleges that on April 24, 2016, Defendant Marsh told inmate Gabriel Price that the housing sergeants had come to an agreement with Defendants Emerson, Wilson, Wescoat, Martines, and Valesco not to provide Plaintiff with an available dry cell. Plaintiff attaches the declaration of Gabriel Price to his second amended complaint. (ECF No. 43 at 42.) Gabriel Price's declaration states, "On 4-24-16 3rd Watch c/o Carillo told me that they are not to move inmate Dillingham D4-237 to D4-225 because the sergeant(s) in D Yard Program Office do not want him in D4-225." (Id.) However, the statement that the sergeant or sergeants did not want Plaintiff moved to cell D4-225 does not support a reasonable inference that there was a conspiracy not to provide Plaintiff with a dry cell. The reasonable interpretation would be that on one occasion, the sergeant did not want Plaintiff placed in cell D4-225 for an unknown reason and the

10

lower ranking officers were following his direction. Further, another declaration states that Plaintiff was not moved to cell 225 but other inmates. So, while the cell might have been available the reasonable inference is that cell 225 was needed for other inmates.

The Court finds that Plaintiff's allegation that Gabriel Price was told that the housing sergeants had come to an agreement with the correctional officers not to provide him with a dry cell is contradicted by the actual declaration of Gabriel Price. The court does not have to accept as true allegations that exhibits to the complaint or that are merely conclusory, are unwarranted deductions of fact, or unreasonable inferences. Sprewell, 266 F.3d at 988; Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiff here only makes conclusory allegations concerning his conspiracy allegations, stating that defendants conspired to maintain uninhabitable cell conditions, but the factual allegations are insufficient to demonstrate that a conspiracy existed to deprive Plaintiff of a dry cell. Plaintiff's conclusion that the knowledge of his inadequate housing by each individual defendant and their failure to provide him with a dry cell must be the result of a common conspiracy is insufficient to state a claim for conspiracy. Specifically, as here where on two of the three occasions that Plaintiff requested to be moved he was not provided with a dry cell because there were none available.

The Court finds that Plaintiff has failed to state a conspiracy claim against any defendant.

### E. Action for Neglect to Prevent

Plaintiff also brings a claim for neglect to prevent in violation of 42 U.S.C. § 1986. "Section 1986 provides a cause of action against anyone who has 'knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do.'" Park v. City of Atlanta, 120 F.3d 1157, 1159–60 (11th Cir. 1997) (quoting 42 U.S.C. § 1986). "Section 1986 claims are therefore derivative of § 1985 violations." Park, 120 F.3d at 1160. "The text of § 1986 requires the existence of a § 1985 conspiracy." Id.

As Plaintiff has not stated any cognizable conspiracy claim under section 1985, he cannot state any claim for knowledge of and neglecting to prevent the conspiracy. Stephens v. Multnomah Cty. by

11

& through Judicial Dep't, 678 F. App'x 517, 519 (9th Cir. 2017) ("A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985.") (quoting Karim-Panahi, 839 F.2d at 626.

**F. Retaliation**

Plaintiff alleges that Defendants Ibarra, Loflen, Emerson, Wilson, Wescoat, Valesco, and Martines retaliated against him by failing to move him to a dry cell and as a result Plaintiff filed grievances against them. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison [pretrial] context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff has stated a retaliation claim against Defendant Wescoat based on the allegation that Defendant Wescoat said he was aware that Plaintiff had filed inmate grievances and he was not going to move Plaintiff or "red flag" his cell.

However, Plaintiff's conclusory allegations that any other named defendant failed to move him due to retaliation is insufficient to state a claim. Plaintiff has failed to allege facts to demonstrate that any other defendant was aware that Plaintiff had filed grievances and took adverse action against him due to that knowledge. Plaintiff has failed to state a retaliation claim against any other named defendant.

**G. State Law Claim**

Plaintiff brings a claim alleging premises liability under California law. The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the

cause of action accrues.[1] Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2 (West 2011). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007) as modified (Oct. 10, 2007) superseded by statute on other grounds as recognized by Rubenstein v. Doe No. 1, 3 Cal.5th 903, 905 (2017), as modified on denial of reh'g (Nov. 1, 2017); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001). To state a tort claim against a public employee, a plaintiff must allege compliance with the Government Claims Act. Shirk, 42 Cal.4th at 209; Bodde, 32 Cal.4th at 1239; Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim, 839 F.2d at 627.

Plaintiff has not alleged compliance with the Government Claims Act, and, therefore fails to state a cognizable state law claim. The Court provides Plaintiff with the legal standard for premises liability.

Under California law, "[p]remises liability is a form of negligence[.]" Brooks v. Eugene Burger Mgmt. Corp., 215 Cal. App.3d 1611, 1619 (1989); see also Wilson v. J.P. Allen Co., 57 F.Supp.3d 1249, 1253 (C.D. Cal. 2014) ("The same concepts of duty applicable to general negligence claims apply to premises liability claims."). "The owner of premises is under a duty to exercise ordinary care in the management of such premises in order to avoid exposing persons to an unreasonable risk of harm. A failure to fulfill this duty is negligence." Brooks, 215 Cal.App.3d at 1619 (quoting BAJI 8.00 (1983 rev.). Under California law "[t]he elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Brown v. Ransweiler, 171 Cal.App.4th 516, 534 (2009); accord Carter v. Nat'l R.R. Passenger Corp., 63 F.Supp.3d 1118, 1144 (N.D. Cal. 2014); Wilson., 57 F.Supp.3d at 1253.

---

[1] Formerly known as the California Tort Claims Act. City of Stockton v. Superior Court, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

To state a premises liability claim, the plaintiff must allege "that the defendant owned or controlled the property, that the defendant was negligent in the use or maintenance of the property, that the plaintiff was harmed, and that the defendant's negligence was a substantial factor in causing the harm." Carter, 63 F.Supp.3d at 1144. "A person who owns or controls property is negligent if he or she fails to use reasonable care to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others." Carter, 63 F.Supp.3d at 1144-45.

The California Government Code provides that, other than certain exceptions, a public entity is not liable for injury to a prisoner due to a dangerous condition of public property. Cal. Gov. Code § 844.6(a)(2) and (c). By enacting this statute, the Legislature intended that prisons be immune from claims by prisoners due to a dangerous condition of public property. Badiggo v. Cty. of Ventura, 207 Cal. App. 3d 357, 361 (1989). However, section 844.6 does not exonerate a public employee from liability for an injury caused by his negligent act or omission. Cal. Gov. Code § 844.6(d).

Based on the foregoing, to state a claim for premises liability, the complaint must allege that an official with control over the property was negligent in the use or maintenance of the property. Here, Plaintiff alleges that the defendants were negligent by failing to repair the roof which allowed water to leak into the building. However, while Plaintiff alleges that the correctional officer and sergeant defendants were aware of the conditions, they would not have control over the property such that they would be responsible for the failure to repair the roof to prevent leaks.

### H. Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

Here, Plaintiff was provided with leave to file an amended complaint and was advised that it was his final opportunity to amend. (Order Granting Pl. Leave to File Sec. Am. Compl. 3, ECF No.

42.) Plaintiff had previously alleged claims of conditions of confinement in violation of the Eighth Amendment, conspiracy, and action for neglect to prevent. Plaintiff was provided with the legal standards that apply to these claims and has failed to correct the deficiencies identified for those defendants against whom he has again failed to state a claim. Accordingly, the Court finds that it would be futile to provide Plaintiff with further opportunity to amend his conditions of confinement, conspiracy, and action for neglect to prevent claims. The Court recommends that the conspiracy and action for neglect to prevent claims be dismissed without leave to amend and that Plaintiff's conditions of confinement claim be dismissed as to Defendants Ibarra, Sherman and Kernan.

Plaintiff has now alleged claims for retaliation and a state law claim for premises liability for which he has not previously been provided with the legal standards. Accordingly, the Court finds that it is appropriate to grant Plaintiff leave to file an amended complaint to cure the deficiencies identified in these claims.

## V.

## CONCLUSION

For these reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's official capacity claim against Defendant Kernan be DISMISSED WITH PREJUDICE;

2. Plaintiff's conspiracy and action for neglect to prevent claims be DISMISSED WITHOUT LEAVE TO AMEND;

3. This action proceed on Plaintiff's claim against Defendants Emerson, Wilson, Wescoat, Valesco, Loflen, Martines, Marsh, and Doe 1, in their individual capacities, for conditions of confinement in violation of the Eighth Amendment; and against Defendant Wescoat for retaliation in violation of the First Amendment; and

4. Plaintiff be ordered to either notify the Court that he is willing to proceed on those claims to be cognizable in the second amended complaint or to file a third amended

15

complaint.[1]

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provision of 28 U.S.C. §636 (b)(1)(B). Within **thirty (30) days** after being served with these finding and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __February 11, 2019__

UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff is advised that this is not an order allowing an amended complaint to be filed. Should the district court adopt the recommendations, Plaintiff will be granted leave to amend in the order adopting and provided with a deadline to file a third amended complaint.