**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERRY DILLINGHAM, | Case No. 1:18-cv-00507-AWI-SAB (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO CORRECT SPELLING OF DEFENDANTS VELASCO'S AND LOFTIN'S NAMES |
| v. | |
| N. EMERSON, et al., | FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION TO DISMISS |
| Defendants. | |
| | (ECF No. 54) |
| | **THIRTY (30) DAY DEADLINE** |

Plaintiff Jerry Dillingham is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil right action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants Velasco's, Martines's, Loftin's, Emerson's, Marsh's, Wescoat's, and Wilson's motion to dismiss, filed on August 19, 2019.[1] (ECF No. 54.)

**I.**

**INTRODUCTION**

This action is proceeding on Plaintiff's second amended complaint against Defendants Emerson, Wilson, Wescoat, Velasco, Loftin, Martines, Marsh and Doe 1, in their individual

---

[1] Plaintiff identified Defendants Velasco and Loftin as "Valesco" and "Lofflen," respectively, and the Court's docket reflects that spelling. However, papers filed by Defendants Velasco and Loftin state that their names are correctly spelled "Velasco" and "Loftin." The docket will be updated accordingly.

1

capacities, for conditions of confinement in violation of the Eighth Amendment, and against Defendant Wescoat for retaliation in violation of the First Amendment. (ECF No. 50.)

As noted above, on August 19, 2019, Defendants Velasco, Martinez, Loftin, Emerson, Marsh, Wescoat, and Wilson filed a motion to dismiss Plaintiff's Eighth Amendment claim on the ground that they are entitled to qualified immunity. (ECF No. 54.) After two extensions of time, Plaintiff filed an opposition on November 12, 2019. (ECF No. 59.) Defendants filed a reply on November 20, 2019. (ECF No. 60.) Accordingly, Defendants' motion to dismiss is deemed submitted for decision. Local Rule 230(l).

## II.

## LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

2

**III.**

**DISCUSSION**

**A.     Summary of Plaintiff's Second Amended Complaint**

The events alleged in Plaintiff's second amended complaint occurred while Plaintiff was housed at California Substance Abuse Treatment Facility and State Prison, Corcoran.

It rained from approximately 11:00 p.m. on January 26, 2016 to the morning of January 26, 2016.  Upon waking up on the morning of January 26, 2016, Plaintiff discovered that large amounts of rainwater had pooled on the floor of his cell, nearly causing Plaintiff to lose his footing and causing Plaintiff to have to wade through the pooled water to gain access to the toilet and sink, or to exit the cell.  Additionally, Plaintiff discovered that the water in his cell was flowing out of his cell and pooling on the upper tier floor.  Subsequently, Plaintiff began hearing other prisoners in the surrounding area tell Defendants Emerson, Wilson, Wescoat, and Martines that their cells were flooded with rainwater.

From January 21, 2016 through May 6, 2016, on the days it rained, Defendants Emerson, Wilson, Wescoat, Martines, Velasco, and Loftin were aware of the flooded conditions in Plaintiff's cell and the surrounding area because each Defendant had to wade or walk through or around puddles of rainwater entering from the roof and pouring down from cells, including Plaintiffs, to pool on the housing unit's dayroom floor and the top and bottom tiers.

When Plaintiff examined the walls of his cell, he discovered that there were holes in the roof and various cracks and breaches that were allowing rainwater to enter the cell and flow down the cell's three walls to pool on the cell floor.  Additionally, Plaintiff discovered that, when it rained, water leaked into the live electrical ceiling light fixture and pooled in the fixture, and then dripped onto the cell floor and cabinet, which caused Plaintiff to be concerned about being electrocuted.  Furthermore, the walls of his cell had mold on them that had built-up over a period of years.  The mold caused Plaintiff to suffer respiratory issues then and at the present time.

From January 21, 2016 through May 6, 2016, on the days it rained, Plaintiff verbally altered Defendants Emerson, Wilson, Wescoat, Martines, and Velasco of the conditions in his cell during the Defendants' security cell inspection counts.  Defendants Emerson, Wilson, Wescoat,

3

Martines, and Velasco would each stop and acknowledge that Plaintiff's cell had pools of water in it and that they were standing in pools of water, but the Defendants would refuse to relocate Plaintiff to a dry, available cell.

Specifically, during the first or second week of February 2016, Plaintiff got Defendant Velasco to stop at Plaintiff's cell during the Defendant's First Watch cell security count check. Plaintiff alerted Defendant Velasco about the threat that the conditions of his cell posed to Plaintiff's safety and Plaintiff asked the Defendant to move him to a safe, dry, and available cell. Defendant Velasco acknowledged that both the cell's light fixture and the cell floor had pools of water. However, Defendant Velasco refused to move Plaintiff to a different cell and stated that, since he had worked in the building, he had noticed that many of the other cells are in the same condition as Plaintiff's cell.

On March 6 or March 7, 2016, Plaintiff woke up during the night and, while trying to gain access to the cell's toilet, Plaintiff slipped and fell, causing Plaintiff's back and head to crash onto the cell floor. Plaintiff then discovered that he fell because rainwater had pooled on his cell floor. Subsequently, Plaintiff alerted Defendant Martines to the hazardous conditions in Plaintiff's cell and Plaintiff's fall. Plaintiff asked Defendant Martines to relocate him to an available dry, safe cell. Defendant Martines told Plaintiff that his cell has had a problem with leaking for a couple of years. Defendant Martines told Plaintiff that his cell should be "red flagged" because there is rainwater in the light fixture and on the cell floor, but that he was not able to "red flag" the cell because he was not a "regular." Additionally, Defendant Martines told Plaintiff that he could not move him to a dry available cell.

The California Department of Corrections and Rehabilitation generated a CDCR 2186 uninhabitable cell work maintenance order sheet for Plaintiff's cell, stating that Plaintiff's cell was unsafe for occupancy due to electrical and water leakage, and the uninhabitable cell maintenance order was hand-delivered to Defendant Marsh's office. On March 8, 2016, Defendant Marsh disclosed to Plaintiff that prison administration has been aware of the rainwater leaking into Plaintiff's cell and other cells in the building through cracks in the roof for over two years.

On March 9, 2016, Plaintiff was seen by Nurse McCoy, who determined that the injuries caused by Plaintiff's fall were continuing to cause Plaintiff significant pain in Plaintiff's lower lumbar back, right hip, and the back of Plaintiff's head.

On May 5, 2016, Plaintiff told Defendant Velasco that the condition in his cell posed a substantial risk to his safety and asked Defendant Velasco to move him to cell 225, which was dry and unoccupied. Plaintiff handed Defendant Velasco a CDCR Form 22 Inmate Request for Service describing the cell conditions and asking for a cell move to cell 225. Later the same day, Defendant Velasco returned the CDCR Form 22 to Plaintiff and stated that he had spoken to his supervisor about Plaintiff's cell conditions and that both he and his supervisor had read Plaintiff's CDCR Form 22, but that neither he nor his supervisor would relocate Plaintiff to cell 225. Further, Defendant Velasco stated that neither he nor his supervisor would sign or respond to Plaintiff's CDCR Form 22 because that would cause "me/us liability." (ECF No. 43, at 16.)

On the days that it would rain between January 21, 2016 through May 2016, Defendants Emerson, Wilson, Wescoat, Martines, and others would specifically instruct Third Watch porters/tier tenders to assign inmate workers, or allow Second Watch porters, to mop C-Section cells 234 to 238 because those cells would flood with rainwater.

On May 6, 2016, Defendants Emerson and Wescoat arrived about 6:30 a.m. Plaintiff observed Defendant Wescoat apparently lose his footing while wading through puddles of water coming out of the cells on the tier. When Defendant Wescoat reached Plaintiff's cell, cell 237, Plaintiff asked Wescoat to move him out of the cell to unoccupied, dry cell 225 because his cell's condition posed a high risk of causing Plaintiff bodily harm. At that time, Defendant Wescoat stood in puddles of rain water coming from underneath Plaintiff's cell door. Defendant Wescoat stated that both he and his partner, Defendant Emerson, knew all about Plaintiff and his "complaining in 602's Appeals" and that they would not "red flag" Plaintiff's cell and move him to cell 225. (Id. at 17.) Plaintiff had filed an inmate grievance against Defendants Emerson and Wilson "for conduct analogous with claims averred herein" on January 21, 2016. (Id. at 18.)

Subsequently, on May 6, 2016, while attempting to gain access to his cell's door, Plaintiff again slipped and fell due to the accumulated rainwater on his cell floor. Plaintiff landed on the

5

cell floor, right hip first, and injured his right hip and lower back.

Plaintiff sought medical care due to his second fall, and, from May 12, 2016 through October 13, 2016, Nurse McCoy and Dr. Brown provided him with medical care. Plaintiff had a consultation with an orthopedist regarding his right hip pain around January 3, 2018. The specialist diagnosed bone on bone trochanteric bursitis and severe osteoarthritis and recommended a hip replacement.

### B. Analysis

Defendants Velasco, Martines, Loftin, Emerson, Marsh, Wescoat, and Wilson argue that they are entitled to qualified immunity on Plaintiff's Eighth Amendment conditions of confinement claim because there is no constitutional violation based on the facts alleged in Plaintiff's second amended complaint and because Defendants' conduct did not violate clearly established constitutional rights of which a reasonable person would have known. (ECF No. 54, at 6-13.) In opposition, Plaintiff contends that Defendants are not entitled to qualified immunity because the Court found that Plaintiff had alleged a cognizable Eighth Amendment claim when it screened Plaintiff's second amended complaint and because Defendants' conduct did violate clearly established constitutional rights that Defendants knew about. (ECF No. 59.)

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). However, "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making. On the one hand, we may not dismiss a complaint making 'a claim to relief that is plausible on its face.'" Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018). "But on the other hand, defendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The Supreme Court has emphasized that this is a low bar, explaining that '[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)).

6

1  "Indeed, '[w]hen properly applied,' qualified immunity protects 'all but the plainly incompetent
2  or those who knowingly violate the law.'" Id.

3  "Determining whether [Defendants] are owed qualified immunity involves two inquiries:
4  (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged
5  show the officer's conduct violated a constitutional right; and (2) if so, whether the right was
6  clearly established in light of the specific context of the case." O'Brien v. Welty, 818 F.3d 920,
7  936 (9th Cir. 2016) (citation and internal quotation marks omitted); see also Saucier v. Katz, 533
8  U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order,
9  the Court has discretion to address the two-step inquiry in the order it deems most suitable under
10 the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling holding in Saucier
11 that the two-step inquiry must be conducted in that order, and the second step is reached only if
12 the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

13 "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule
14 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that
15 qualified immunity applies." O'Brien, 818 F.3d at 936 (citation and internal quotation marks
16 omitted). "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not
17 only those that support his claim, but also those that defeat the immunity defense." McKenna v.
18 Wright, 386 F.3d 432, 436 (2d Cir. 2004). "If the operative complaint 'contains even one
19 allegation of a harmful act that would constitute a violation of a clearly established constitutional
20 right,' then plaintiff[ is] 'entitled to go forward' with [his] claims." Keates, 883 F.3d at 1235
21 (citation omitted).

22 As applied to this case, the Eighth Amendment right to live in minimally safe shelter or
23 housing was "clearly established at the time of [D]efendants' actions." Krainski v. State ex rel.
24 Bd. of Regents, 616 F.3d 963, 969 (9th Cir. 2010); see Hoptowit v. Spellman, 753 F.2d 779, 784
25 (9th Cir. 1985) ("Persons involuntarily confined by the state have a constitutional right to safe
26 conditions of confinement."). Further, forcing prisoners to live with fire and/or electrical hazards
27 causing unreasonable threat of injury or death has long been prohibited by the Eighth
28 Amendment. Hoptowit, 753 F.2d at 784 ("Prisoners have the right not to be subjected to the

unreasonable threat of injury or death by fire and need not wait until actual casualties occur in order to obtain relief from such conditions."); Toussaint v. McCarthy, 597 F. Supp. 1388, 1410 (N.D. Cal. 1984) ("Electric wiring that presents a continuous danger of death or serious injury from fire or electrocution is [cruel and unusual punishment].)  Finally, at the time of Defendants' action, both precedent and common sense clearly established that exposing an inmate to a substantial risk of physical injury from electrical circuits or wiring exposed to rainwater can violate the Eighth Amendment.  Bentz v. Hardy, 638 F. Appx. 535, 538 (7th Cir. 2016) ("[P]rison officials who recklessly expose a prisoner to a substantial risk of physical injury – *e.g.,* an electrical circuit exposed to rainwater – violate the Eighth Amendment even if no physical injury actually results[.]"); Cotton v. Taylor, 176 F.3d 479, 1999 WL 155652, at *4 (5th Cir. 1999) (*per curiam*) (stating that prisoners' testimony at a bench trial that "there was so much water on the floor at times that the electrical receptacles would spark and smoke and that they feared electrocution[]" established that conditions created by water entering the housing unit through a leaking roof "deprive[d] the plaintiffs of minimally safe housing" in violation of the Eighth Amendment); see also Tran v. Langford, No. CV 16-1869 VBF (FFM), 2017 WL 990477, at * (C.D. Cal. Jan. 23, 2017) (stating that there is an "inherent danger that comes along with submerging electrical wires in liquid").  Therefore, a reasonable official in Defendants' shoes would thus have known that leaving an inmate housed in a cell where electrical circuits and/or wiring in the cell were exposed to rainwater violated Plaintiff's Eighth Amendment right to minimally safe housing.

In his second amended complaint, Plaintiff alleges that, from January 26, 2016 through May 6, 2016, on the days that it rained, water leaked into the live electrical ceiling light fixture from the holes in the roof and pooled in the light fixture, which caused Plaintiff to be concerned about being electrocuted.  Further, Plaintiff alleges that, from January 21, 2016 through May 6, 2016, Defendants Emerson, Wilson, Wescoat, Martines, Velasco, and Loftin were alerted to the water pooling in the live electrical ceiling light fixture because, during security cell inspection counts, each Defendant would stop and acknowledge the conditions in Plaintiff's cell after Plaintiff verbally alerted each Defendant to the hazardous conditions in his cell.  Additionally,

8

Defendant Marsh was aware of the water pooling in the live electrical ceiling light fixture in Plaintiff's cell because an uninhabitable cell emergency maintenance order sheet stating that Plaintiff's cell was unsafe for occupancy due to "electrical and water leakage" was hand-delivered to Defendant Marsh's office. (ECF No. 43, at 14.) On March 8, 2016, Defendant Marsh told Plaintiff that he had been aware of the conditions in Plaintiff's cell for two years. (ECF No. 43, at 14.) Therefore, construed in the light most favorable to Plaintiff, Plaintiff's second amended complaint sufficiently alleges that Defendants Velasco, Martines, Loftin, Emerson, Marsh, Wescoat, and Wilson violated clearly established law by being deliberately indifferent to the substantial risk of physical injury to Plaintiff caused by the water regularly pooling in the live electrical ceiling light fixture in Plaintiff's cell.

As noted above, the Ninth Circuit has held that if a complaint "'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiff[ is] 'entitled to go forward' with [his] claims." Keates, 883 F.3d at 1235 (citation omitted). However, the Ninth Circuit has also held that the Court's "decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity 'were the case permitted to proceed, at least to the summary judgment stage' and the court is presented with facts providing context for the challenged actions." Id.

Accordingly, Defendants Velasco's, Martines's, Loftin's, Emerson's, Marsh's, Wescoat's, and Wilson's motion to dismiss Plaintiff's Eighth Amendment claim based on qualified immunity should be denied without prejudice. O'Brien, 818 F.3d at 936 ("Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity.")

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, the Clerk of the Court is HEREBY ORDERED to correct the spelling of Defendants Velasco's and Loftin's names on the court docket by substituting "Velasco" for "Valesco" and "Loftin" for "Lofflen."

9

Furthermore, it is HEREBY RECOMMENDED that Defendants Velasco's, Martines's, Loftin's, Emerson's, Marsh's, Wescoat's, and Wilson's motion to dismiss Plaintiff's Eighth Amendment claim based on qualified immunity, (ECF No. 54), be DENIED.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**December 18, 2019**__

UNITED STATES MAGISTRATE JUDGE