1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DILLINGHAM, | Case No. 1:18-cv-00507-AWI-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL OF DOE DEFENDANT |
| v. | |
| N. EMERSON, et al., | |
| Defendants. | (ECF No. 128) |

Plaintiff Jerry Dillingham is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed June 28, 2022.

### I.

### RELEVANT BACKGROUND

This action is proceeding on Plaintiff's second amended complaint against Defendants Emerson, Wilson, Wescoat, Velasco, Loftin, Martinez, Marsh and Doe 1 for conditions of confinement in violation of the Eighth Amendment, and against Defendant Wescoat for retaliation in violation of the First Amendment.  (ECF No. 50.)

On March 24, 2020, Defendants filed an answer to the complaint on March 24, 2020. (ECF No. 68.)

///

1    After an unsuccessful settlement conference, the Court issued the discovery and

2  scheduling order on August 26, 2020.  (ECF No. 87.)

3    As previously stated, on June 28, 2022, Defendants filed the instant motion for summary

4  judgment.  (ECF No. 128.)  Despite receiving extensions of time of time to file an opposition, no

5  opposition was filed and the deadline to do has passed.  (ECF No. 137.)  Accordingly,

6  Defendants' motion for summary judgment is deemed submitted for review.  Local Rule 230(l).

**II.**

**LEGAL STANDARD**

**A.    Summary Judgment Standard**

10    Any  party  may  move  for  summary  judgment,  and  the  Court  shall  grant  summary

11  judgment if the movant shows that there is no genuine dispute as to any material fact and the

12  movant  is  entitled  to  judgment  as  a  matter  of  law.    Fed.  R.  Civ.  P.  56(a)  (quotation  marks

13  omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).   Each party's

14  position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

15  particular parts of materials in the record, including but not limited to depositions, documents,

16  declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

17  absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

18  support the fact.   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider

19  other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

20  Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

21  2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

22    In  judging  the  evidence  at  the  summary  judgment  stage,  the  Court  does  not  make

23  credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509

24  F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

25  inferences in the light most favorable to the nonmoving party and determine whether a genuine

26  issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

27  City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

28  ///

## III.

## DISCUSSION

### A.  Summary of Plaintiff's Complaint

The incidents alleged in the complaint occurred while Plaintiff was housed at California Substance Abuse Treatment Facility and State Prison, Corcoran.

It rained during the evening of January 25, 2016 to the morning of January 26, 2016. Plaintiff woke the morning of January 26, 2016 to a large puddle in his cell nearly causing him to lose his footing.  Plaintiff heard other prisoners complaining to Defendants Emerson, Wilson, Wescoat, and Martinez that their cells were flooded.  Plaintiff alleges that Defendants Emerson, Wilson, Wescoat, Martinez, Velasco, and Loftin were aware of the flooding because from January 21, 2016 through May 5, 2016 they had to wade through the puddles in the building when they made their rounds.  Defendants Emerson, Wilson, Wescoat, and Martinez would have the inmate porters come and mop up the water that had flooded into the cells.  Plaintiff states that on examination, he could see that there were holes in the roof that allowed the rain to come into the building.  The water dripped down and flooded the light fixtures with water and onto the floor.  Plaintiff contends that the cell walls had mold on them demonstrating that the issue had existed for years.  Plaintiff alleges that he suffered respiratory issues due to the mold.

Plaintiff contends that from January 21, 2016, through May 5, 2016, on days that it rained, he complained to Defendants Emerson, Wilson, Wescoat, Martinez and Velasco during security inspection about the hazardous conditions.  The defendants would stand in a puddle of water in front of his cell door and did not relocate Plaintiff to a dry available cell.

During the first two weeks of February 2016, Plaintiff asked Defendant Velasco to move him to a dry cell.  Defendant Velasco noticed the condition of Plaintiff's cell and told Plaintiff that he would not move him because since he had worked in the building he had noticed that many of the other cells are in the same condition.

Around March 6 or 7, 2016, Plaintiff woke up during the night and slipped on the wet floor causing him injury.  Plaintiff asked Defendant Martinez to move him to a dry cell. Defendant Martinez told Plaintiff that his cell has had a problem with leaking for a couple of

years.  Defendant Martinez told Plaintiff that his cell should be "red flagged" but that he was not able to do it because he was not a "regular."  Defendant Martinez told Plaintiff that he could not move him to a dry cell.

On March 8, 2016, Defendant Marsh told Plaintiff that the administration has been aware of that Plaintiff's cell has water leaking into it from the cracks in the roof for over two years.

Plaintiff submitted a health care request and, on March 9, 2016, he was seen by Nurse McCoy who provided Plaintiff with medication for his lower back and hip pain and headache. Plaintiff was referred for follow-up treatment.

On May 5, 2016, Plaintiff complained to Defendant Velasco that it had rained overnight and his cell was again flooded.  Plaintiff asked to be housed in a dry cell.  Plaintiff gave him a completed inmate request for services.  Later than day, Plaintiff saw Defendant Velasco in the office with a sergeant (Doe 1) passing the form back and forth and discussing it.  Defendant Velasco came to Plaintiff's cell and told him that they had discussed his form and he would not be moved to cell 225.  Defendant Velasco told Plaintiff that he would not sign the form because it would cause him to be liable.  Defendant Velasco handed Plaintiff back the form.  Plaintiff asked Defendant Velasco for the supervisor's name, but Defendant Velasco just turned and walked away.

On May 6, 2016, Defendant Emerson and Wescoat arrived about 6:30 and Defendant Wescoat lost his footing while wading through the puddles of water.  Plaintiff asked to be moved out of his cell into cell 225 which was vacant.  Defendant Wescoat refused to move Plaintiff to cell 225 stating that they knew about his complaining in inmate appeals and that neither he nor Emerson would "red flag" Plaintiff's cell.  Plaintiff had filed an inmate grievance against Defendant Emerson and Wilson on January 21, 2016.  Defendant Wescoat walked away. Plaintiff slipped on the wet floor injuring his right hip and his lower back.

Plaintiff sought medical care and from May 12, 2016, through October 13, 2016, Nurse McCoy and Dr. Brown provided him with medical care.  Plaintiff had a consultation with an orthopedist regarding his right hip pain around January 3, 2018.  The specialist diagnosed bone on bone trochanteric bursitis and severe osteoarthritis and recommended a hip replacement.

**B.      Statement of Undisputed Facts[1]**

1.      Plaintiff Jerry Dillingham was an inmate incarcerated by the California Department of Corrections and Rehabilitation (CDCR) and was housed at the Substance Abuse Treatment Facility and State Prison, Corcoran (SATF) during the time period relevant to his allegations in this case. (Sec. Am. Comp. (SAC) at 2, 4-7; Declaration of B. Hancock (Hancock Decl.) Ex A.)

2.      Plaintiff was housed in Facility D, Building 4, Cell 237, lower bunk, from January 21, 2016, to May 6, 2016.  (Hancock Decl. Ex. A; Pl. Dep. at 46:17-21, 48:8-15.)

3.      The layout and positioning of the furniture, outlets, and the light fixture on the ceiling in cell 237 has not changed since Plaintiff was reassigned to a different cell on May 6, 2016.  (Declaration of J. Barba (Barba Decl.) ¶¶ 3-4 & Ex. A.)

4.      During the time he was assigned to cell 237, Plaintiff did not have any physical disabilities and there were no disabilities, accommodations, or limitations noted in his file. (Hancock Decl. Exs. B & C; Pl. Dep. at 32:22-33:1.)

5.      Plaintiff claims that while he was living in cell 237, rainwater would enter the cell and accumulate on the floor every time it rained outside.  (Pl. Dep. at 63:14-24.)

6.      Plaintiff claims he told Defendants about the water in his cell and asked to be moved to a different cell, but Defendants refused.  (Pl. Dep. at 79:24-80:16; 89:9-17, 90:2-8, 90:20-91:5, 91:24-92:4, 94:23-95:8, 99:12-18.)

7.      Plaintiff claims that he slipped and fell on the morning of March 6 or 7, 2016, but did not request emergency medical attention at the time of the fall, instead submitting a request for health services form to medical staff.  (Pl. Dep. at 77:20-78:15, 79:8-17.)

8.      Plaintiff claims that he slipped and fell again on May 6, 2016.  (Pl. Dep. at 79:24-81:1, 106:19-22.)

9.      Plaintiff was moved to cell 115 on May 6, 2016.  (Hancock Decl. Ex. A; Pl. Dep. at 89:25-1.)

---

[1] Hereinafter referred to as "UF."

10.    Plaintiff claims that he saw rain water pooling in the ceiling light fixture near wires and saw sparks on a couple of occasions, but does not remember where he saw the sparks or who he told about seeing the sparks, and cannot testify that the lights ever stopped working. (Pl. Dep. at 73:22-75:6, 75:16-20, 76:20-77:17, 86:17-20, 87:7-11.)

11.    The light fixture had a plastic cover, Plaintiff could not reach the ceiling or the light fixture while standing on the floor of his cell, and Plaintiff never touched the light fixture. (Pl. Dep. at 67:10-15, 69:24-70:22, 75:13-15.)

12.    Plaintiff was not physically injured in any way because of the purported water in his light fixture.  (Pl. Dep. at 86:14-16.)

13.    Plaintiff sued Defendant Loftin because he was told Loftin was the first watch sergeant, but Loftin never spoke to Plaintiff and never came to Plaintiff's cell.  (Pl. Dep. at 97:9-99:17.)

14.    As Captain of Facility D at SATF, Defendant Marsh was not responsible for day-to-day operation of Plaintiff's housing unit, but instead delegated authority to housing unit staff to address specific housing issues and cell reassignments.  (Declaration of S Marsh (Marsh Decl.) ¶¶ 3-4; Pl. Dep. at 100:19-101:13.)

15.    Plaintiff claims that Marsh or Marsh's secretary was supposed to receive documents from floor staff regarding conditions in cells, but Marsh never received any such documents.  (Marsh Decl. ¶¶ 4-5; Pl. Dep. at 100:19-101:13.)

**C.    Analysis of Defendants' Motion**

Defendants argue that the undisputed evidence does not establish an objectively sufficient serious deprivation and it was not clearly established that rainwater on the floor of a cell was an unconstitutional condition of confinement.  Defendants Marsh and Loftin also argue that they had no personal involvement with respect to Plaintiff's claims.

To prove a violation of the Eighth Amendment the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).  Deliberate indifference requires

a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety, and that there was no "reasonable justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 844 (1994)). Officials may be aware of the risk because it is obvious. Thomas, 611 F.3d at 1152. An inmate is challenging the conditions of confinement must show there was a deprivation "sufficiently serious" to form the basis of a violation, and "the prison official acted "with a sufficiently culpable state of mind." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim." Johnson, 217 F.3d at 731.

      1.    Objectively Serious Deprivation

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Although the Constitution " 'does not mandate comfortable prisons,'" Wilson v. Seiter, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

Under the Eighth Amendment, "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment." LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (quotation omitted); Jackson v. Arizona, 885 F.2d 639, 641 (9th Cir. 1989). Indeed, federal courts have repeatedly rejected Eighth Amendment slip and fall claims. See Oubichon v. Carey, No. 2:06-cv-2749-JAM-EFB P, 2017 WL 2162940, at *8 (E.D. Cal. May 17, 2017) (citing Coleman v. Sweetin, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); see also Collier v. Garcia, No. 17-cv-05841 LHK (PR), 2018 WL 659014, at *2 (N.D. Cal. Jan. 31, 2018) (dismissing § 1983 claim alleging prisoner slipped and fell in his cell in a puddle of water from a leaking chase); Aaronian v. Fresno Cty. Jail, No. 1:10-cv-00518- JLT (PC), 2010 WL 5232969, at *2–*3 (E.D. Cal. 2010) (dismissing § 1983 claim that plumbing leak

caused puddle, resulting in plaintiff's slip and fall, as not cognizable); <u>Gilman v. Woodford</u>, No. CIV S-05-0337 FCD GGH P, 2006 WL 1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner slipped and fell in puddle of water resulting from leaky roof known to defendants), aff'd by 2008 WL 686740 (9th Cir. March 12, 2008) (unpublished memorandum disposition). Therefore, in order to state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to plaintiff's safety. <u>See</u> <u>Frost v. Agnos</u>, 152 F.3d 1124, 1129 (9th Cir. 1998) ("[s]lippery floors without protective measures could create a sufficient danger to warrant relief" when an inmate alleges facts that exacerbate the danger resulting from such conditions; inmate using crutches had repeatedly fallen and injured himself on slippery shower floors); <u>Osolinski v. Kane</u>, 92 F.3d 934, 938 (9th Cir. 1996) (finding prisoner failed to plead any exacerbating conditions which rendered him unable to provide for his own safety).

Here, it is undisputed that Plaintiff claims on the days it rained, rain water would leak into the cell and accumulate on the floor, causing the floor to be slipper. (UF 5; Sec. Am. Compl. at 8-9, ECF No. 43.) Plaintiff claims he fell on the slipper floor on March 6 or 7, 2016, but he acknowledges that he did not alert any Defendant at the time of the fall, nor did he seek immediate medical care. (UF 7.) Instead, Plaintiff submitted a written request for medical care to medical staff. (<u>Id.</u>) Plaintiff further contends that he fell again on May 6, 2016, the day he was moved to cell 115. (UF 8-9.)

Plaintiff has not pled any conditions that rendered him unable to provide for his own safety in the sense that they precluded him from avoiding the puddle or rendered him unable to perceive the slippery conditions. <u>Osolinski</u>, 92 F.3d at 938; <u>Mancinas v. Brown</u>, No. 2:16-cv-2806-EFB P, 2018 WL 1109673, at *2 (E.D. Cal. Mar. 1, 2018) (dismissing prisoner's § 1983 claim that known, ongoing leak caused puddle, resulting in slip and fall). There is no evidence that Plaintiff possessed, or that Defendants knew of some exacerbating condition contributing to the flooded cell such that Plaintiff was unable to observe the water or was otherwise unable to provide for his own safety. Indeed, Plaintiff's disability and

accommodations summary shows that he had no restrictions, accommodations, or medical equipment issued to him before April 5, 2017.  (UF 4; Hancock Decl. Ex. B.)  Moreover, Plaintiff's medical classification chrono from before he was housed in cell 237 indicates that he required only an outpatient level of care, had no particular need for a proximity to consult, had full duty functional capacity, was only a medium medical risk, and needed only basic nursing. (UF 4; Hancock Decl. Ex. C.)  Furthermore, Plaintiff has acknowledged that he was active in sports and had no physical impairments when he was assigned to cell 237.  (Sec. Am. Compl. at 19.)  Although Plaintiff claims that he told Defendants about water accumulating on his cell floor and they failed to remedy the condition, such allegations do not rise to the level of an Eighth Amendment claim for deliberate indifference.  The circumstances alleged by Plaintiff do not shock the conscience, nor are they repugnant to civilized standards of maturing society.  Without something more than a slippery floor or a flooded cell, Defendants could not have known about an objectively serious condition creating a substantial risk of serious harm.  Because Ninth Circuit precedent requires something more than a slippery wet floor, and Plaintiff does not present anything more, Defendants' motion for summary judgment should be granted.[2]

  D. <u>Dismissal of Doe Defendant Pursuant to Federal Rule of Civil Procedure 4</u>

  Plaintiff's claim against Defendant Doe 1 remains.  Although "the use of 'John Doe' to identify a defendant is not favored," <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980), "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds," <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999).

  Here, the Court accorded Plaintiff this opportunity in its June 2019 service order, explaining that Defendant Doe could not be served before being identified and noting that Plaintiff could amend his complaint if the Defendant's identity were ascertained during discovery. (ECF No. 50 at n.1.) The August 2020 initial scheduling order provided that the

---

[2] Inasmuch as the Court recommends that Defendants' motion for summary judgment be granted on the merits of Plaintiff's Eighth Amendment claim, the Court need not reach the additional arguments presented by Defendants.

parties could conduct discovery until April 26, 2021.  (ECF No. 87.)  The discovery deadline was later extended to January 28, 2022.  (ECF No. 116.)  Plaintiff has not moved to amend his complaint, moved to substitute Defendant Doe, or otherwise notified the Court of the identity of Defendant Doe.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). This 90-day deadline under Rule 4(m) applies to service on unnamed defendants. See Bulgara v. Cty. of Stanislaus, No. 1:18-cv-00804-DAD-SAB, 2020 WL 5366306, at *5 (E.D. Cal. Sept. 8, 2020), report and recommendation adopted, No. 1:18-cv-00804-DAD-SAB (PS), 2021 WL 1105255 (E.D. Cal. Mar. 23, 2021) (dismissing action against "Doe defendants" for failure to serve within Rule 4(m)'s 90-day deadline). In this case, well over 90 days have elapsed since the filing of Plaintiff's second amended complaint on January 11, 2019.  (ECF No. 43.)  Plaintiff has therefore failed to serve the Defendant Doe in compliance with Rule 4(m).

In addition to Rule 4(m)'s requirements, "a court may dismiss a defendant, a claim[,] or an action based on a party's failure to prosecute an action[,] failure to obey a court order, or failure to comply with local rules." Bulgara, 2020 WL 5366306, at *5 (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint), Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules)).  Plaintiff received advisement that he was required to amend his complaint to identify the Doe Defendant so that the complaint could be served. (ECF No. 50.)  Discovery has closed and the deadline to amend the pleadings has passed without Plaintiff filing anything to indicate that he has identified Defendant Doe.

Where Plaintiff has failed to effect service in accordance with Rule 4(m) and has failed to comply with the orders instructing him to identify the defendant before the close of discovery, dismissal of a Doe defendant is warranted. See Williby v. California, 276 F. App'x 663, 665 (9th Cir. 2008) (holding district court's sua sponte dismissal of Doe defendants was merited where plaintiff had failed to identify defendants within allotted discovery period); Bulgara, 2020 WL 5366306, at *5 (recommending dismissal of Doe defendants, without additional notice, for failure to effect service under Rule 4(m) where defendants were not identified within the allotted discovery period). Accordingly, Defendant Doe should be dismissed from this action.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment be granted; and

2.      Defendant Doe 1 be dismissed from the action pursuant to Rule 4(m).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 22, 2022**

UNITED STATES MAGISTRATE JUDGE